UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANTHONY WRIGHT, FOR AND ON
BEHALF OF HIS WIFE, STACEY
DENISE SCOTT WRIGHT, DECEASED,
AND ON BEHALF OF ALL WRONGFUL
DEATH BENEFICIARIES                                           PLAINTIFFS

VS.                                  CIVIL ACTION NO. 3:13-CV-637TSL-JCG


UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, RAND BEERS,
RUBEN ORLANDO BENITEZ,
AND LANDMARK OF D'IBERVILLE, LLC                              DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
United States of America and the United States Department of
Homeland Security (collectively the Government) to dismiss, or in
the alternative for summary judgment, pursuant to Rule 56 of the
Federal Rules of Civil Procedure.  As the motion was premised in
part on sovereign immunity, the court, upon the Government's
filing of the motion, entered an order staying the case pending
resolution of the motion.  In response, plaintiff Anthony Wright
moved to extend the deadline for responding to the motion and to
lift the stay to permit immunity-related discovery.  The
Government responded in opposition to that motion.  Plaintiff has
since filed a response to the Government's motion in which he both
reiterates his request for an extension and an opportunity for

discovery and presents merits-based arguments.  For reasons that
follow, the court concludes that plaintiff's motion to lift the
stay to permit immunity-related discovery should be denied.  The
court further concludes that the Government's motion to dismiss is
well taken and should be granted.

Facts:

On September 17, 2011, Stacey Denise Scott Wright, an
employee of the Transportation Security Administration (TSA), an
agency of the United States Department of Homeland Security (DHS),
was stabbed to death at her apartment in D'Iberville, Mississippi
by her supervisor at TSA, Ruben Orlando Benitez, with whom Mrs.
Wright was having an affair.  Benitez was tried and convicted of
Mrs. Wright's murder in March 2013 and sentenced to life in
prison.  Evidence at Benitez's trial established that he spent the
two days prior to the murder with Mrs. Wright at her apartment.
The murder occurred on a Saturday night, soon after Benitez and
Mrs. Wright had returned to the apartment following dinner at a
local restaurant.  According to Benitez's testimony at his trial,
on the way to the apartment from dinner, the two had begun arguing
about their relationship.  Upon entering the apartment, a comment
by Mrs. Wright comparing Benitez to her husband, from whom Mrs.
Wright was separated, caused him to go into an uncontrollable rage
in which he grabbed a knife from the counter and began stabbing
her repeatedly, resulting in her death.

2

Prior Litigation:

On July 23, 2012, Anthony Wright, Mrs. Wright's husband, filed a lawsuit asserting claims against the Government and Benitez for sexual harassment, assault and battery, wrongful death and alienation of affection, and against the Government for negligence in failing to prevent the attack.  Additionally, plaintiff sued Landmark of D'Iberville (Landmark), the Mississippi limited liability company which owned and managed the apartment complex where the murder occurred, for alleged negligence in failing to maintain the premises in a reasonably safe condition.

On motion of the Government, the court dismissed plaintiff's sexual harassment claims, which were necessarily brought under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, for failure to exhaust administrative remedies; dismissed his claim against the Government for alienation of affection for lack of jurisdiction due to plaintiff's failure to present an administrative tort claim encompassing this tort, as required by the Federal Tort Claims Act (FTCA) 28 U.S.C. § 2675(a); and dismissed his claims against the Government for wrongful death, assault and battery and negligence in failing to prevent the assault and battery, on the basis that the FTCA does not waive the Government's sovereign immunity as to these claims.  See Wright ex rel. Wright v. United States, 914 F. Supp. 2d 837 (S.D. Miss.

3

2012).  Following the dismissal of these federal claims, there remained only state tort claims for alienation of affection and assault and battery against Benitez and for negligence against Landmark.[1]  The court declined to exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a) and on September 10, 2013 dismissed plaintiff's complaint in its entirety.  See Wright ex rel. Wright v. United States, Civ. Action No. 3:12CV514TSL-MTP (S.D. Miss. Sept. 10, 2013).

The Present Lawsuit:

A month later, on October 10, 2013, plaintiff filed this second lawsuit against Benitez, the Government and Landmark, asserting many of the same claims as in his original suit. Specifically, plaintiff has reasserted his state law claims against Benitez for assault and battery and wrongful death and against Landmark for negligence and wrongful death, and he has asserted claims against the Government (1) for alienation of affection, based on allegations that the Government, through its employees, knew or should have known about the affair between Benitez and Stacey Wright and yet failed to take appropriate preventative and/or corrective action to prevent the affair;

---

[1]    The court notes that Landmark has reached a settlement of plaintiff's claims against it and been dismissed from the action.

4

(2) for alleged negligence in failing to prevent the affair and the attack as the Government knew or should have known both of the affair and of Benitez's propensity for violence and yet failed to protect Mrs. Wright; (3) for assault and battery, based on allegations that Benitez's attack on Mrs. Wright was done in the course and scope of his employment, making the Government vicariously liable for his actions; and (5) for wrongful death based on all of the foregoing.  The Government again seeks dismissal of all of the claims against it.  The court considers each claim in turn.

Assault and Battery

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983).  The FTCA waives the federal government's immunity from suit "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1).  See also 28 U.S.C. § 1346(b)(1) (giving federal courts jurisdiction over claims against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or

5

employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."); Richards v. United States, 369 U.S. 1, 6, 82 S. Ct. 585, 7 L. Ed. 2d 492 (1962) ("The Tort Claims Act was designed primarily to remove the sovereign immunity of the United States from suits in tort and, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.").  However, the FTCA enumerates a number of exceptions to the waiver of immunity, including, as is pertinent here, an exception for all claims "arising out of assault, battery" and other specified intentional torts.  See 28 U.S.C. § 2680(h) (providing that FTCA does not waive sovereign immunity for certain enumerated intentional torts, including "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" unless the government actor was an investigative or law enforcement officer).

In plaintiff's previous lawsuit, the court dismissed his claims against the Government for assault and battery and for wrongful death arising from assault and battery based on the assault and battery exception to the FTCA's waiver of immunity. See Wright, 914 F. Supp. 2d at 845-46.  In its motion in this

6

case, the Government argues that plaintiff's claim for assault and battery and for wrongful death based on assault and battery are likewise barred by the assault and battery exception. It further argues that there is no waiver of immunity since Benitez was plainly not acting in the course and scope of his employment when he attacked Mrs. Wright. The Government is correct on both points.

Under the FTCA, the Government is only liable for torts of its employees committed in the course and scope of their employment. See 28 U.S.C. § 2679(b)(1) and § 1346(b)(1). In his response to the Government's motion, and in his separate motion to lift stay and permit immunity discovery, plaintiff argues that he needs limited discovery in order to gather evidence to determine whether or not Benitez was acting within the course and scope of his employment. In the court's opinion, discovery will not aid plaintiff for two reasons. First, because of the assault and battery exception to the FTCA waiver of immunity, even if Benitez was in the course and scope of his employment at the time of the attack, the Government could not be held vicariously liable for his actions. Second, plaintiff has offered no plausible theory upon which one could reasonably conclude that Benitez was acting within the scope of his employment when he murdered Mrs. Wright.

"The issue of whether an employee is acting within the scope of his employment for purposes of the FTCA is governed by the law

of the state in which the wrongful act occurred." <u>Bodin v. Vagshenian</u>, 462 F.3d 481, 484 (5th Cir. 2006) (citations omitted). Under Mississippi law, to be within the scope of employment, the acts must have been "committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business... [or] incidental to the authorized conduct." <u>Adams v. Cinemark U.S.A., Inc.</u>, 831 So. 2d 1156, 1159 (Miss. 2002). "An employee's unauthorized acts may yet be within the course and scope of employment if they are of the 'same general nature as the conduct authorized or incidental to that conduct.'" <u>Tanks v. Lockheed Martin Corp.</u>, 417 F.3d 456, 464 (5th Cir. 2005). But "[a]n intentional violent assault on a co-worker is quite obviously neither committed as a means of accomplishing the purposes of the employment nor of the same general nature as authorized conduct." <u>Id</u>.[2] Accordingly,

------

[2]     The only facts to which plaintiff has alluded as a basis for his allegation that Benitez was acting within the scope of his employment at the time of the attack are these:  Benitez's duties as a TSA official included mandatory weekly travel to the Gulfport-Biloxi International Airport (which is also where Mrs. Wright worked); that Benitez traveled to the Mississippi Gulf Coast in a government-owned vehicle; and that when he traveled to the Gulf Coast for work, he stayed with Mrs. Wright at her apartment.  Plaintiff declares that "[a]t all times that Ruben Orlando Benitez was in use of the government vehicle, including his visit to the Gulfport/Biloxi International Airport, he was within the scope of his employment."  However, while Benitez may have traveled to the Gulf Coast to perform work-related duties, he did not go to the airport or do any work on the day of the murder but rather remained at Mrs. Wright's apartment.  After Mrs. Wright returned home from work, the two went to the grocery store together, after which they returned to the apartment to watch a

plaintiff cannot possibly establish that Benitez was acting in the course and scope of his employment when he murdered Mrs. Wright.[3] Therefore, his claims against the Government for assault and battery and wrongful death based on the assault and battery are barred as a matter of law.

<u>Negligence</u>

The assault and battery exceptions to the FTCA's waiver of sovereign immunity do not merely bar claims for assault and battery but instead broadly exclude from the FTCA's waiver of

---

movie, and then went out to dinner, using Mrs. Wright's vehicle. There is no arguable basis for concluding that the attack following their return to the apartment was committed by Benitez "in the course of and as a means to accomplishing the purposes of [his] employment and therefore in furtherance of [TSA's] business ... [or] incidental to the authorized conduct." <u>Adams v. Cinemark U.S.A., Inc.</u>, 831 So. 2d 1156, 1159 (Miss. 2002).

[3]    Plaintiff apparently posits that Benitez could be found to have been within the scope of his employment if his position at TSA enabled him to continue the affair with Mrs. Wright and thus to continue to have contact with her, which contact ultimately led to her murder. His position has no merit.  The Mississippi courts have recognized that an employer may be held liable on agency principles for an employee's acts outside the course and scope of his employment "if the [employee] was aided in accomplishing the tort by the existence of the agency relation." <u>Jones v. B.L. Dev. Corp.</u>, 940 So. 2d 961, 966 (Miss. Ct. App. 2006) (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 757, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), in turn, quoting <u>Restatement of Agency</u> § 219(2)(d)); <u>id.</u> ("'scope of employment does not define the only basis for employer liability under agency principles'") (quoting <u>Ellerth</u>, 524 U.S. at 758, 118 S. Ct. 2257).  However, as the FTCA's waiver of immunity extends only to torts committed within the scope of employment, agency principles that might be advanced as a basis for imposing liability for acts committed outside the course and scope of employment have no relevance.

9

immunity any claim "arising out of assault or battery," including

claims "'that sound in negligence but stem from a battery

committed by a Government employee.'"   <u>Bodin</u>, 462 F.3d at 488

(quoting <u>Shearer v. United States</u>, 473 U.S. 52, 55, 105 S. Ct.

3039, 87 L. Ed. 2d 38 (1985)).   In <u>Shearer</u>, the Court,

interpreting the "arising out of" language, explained:

> [A plaintiff] cannot avoid the reach of § 2680(h) by
> framing her complaint in terms of negligent failure to
> prevent the assault and battery.   Section 2680(h) does
> not merely bar claims *for* assault or battery; in
> sweeping language it excludes any claim *arising out of*
> assault or battery.   We read this provision to cover
> claims ... that sound in negligence but stem from a
> battery by a Government employee.

473 U.S. at 55, 105 S. Ct. 3039 (emphasis in original).   473 U.S.

at 55, 105 S. Ct. 3039).   However, in <u>Sheridan v. United States</u>,

487 U.S. 392, 401, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), the

Court "clarified that the intentional tort exception does not bar

all negligence claims that are related to an assault or battery

committed by a government employee[,]" <u>Bodin</u>, 462 F.3d at 488

(citing <u>Sheridan</u>), holding that "the negligence of other

Government employees who allowed a foreseeable assault and battery

to occur may furnish a basis for Government liability that is

entirely independent" of the employment status of the person

committing the assault[,] <u>Sheridan</u>, 487 U.S. at 401, 108 S. Ct.

2449.

Relying on Sheridan, plaintiff argued against dismissal of his negligence claim in his prior case, asserting that discovery might reveal evidence that other TSA or DHS personnel knew or should have known of Benitez's intention to harm Stacey Wright and yet failed to act to prevent such harm.  The court rejected plaintiff's attempt to avoid dismissal on this basis, reasoning that since plaintiff had made no such claim in his complaint, the issue was not properly before the court for consideration.  See Wright, 914 F. Supp. 2d at 846.  In contrast to his earlier complaint, plaintiff alleges in his complaint in this cause that TSA and DHS knew or should have known that Benitez and Mrs. Wright were engaged in an affair; that TSA and DHS also knew or should have known that Mrs. Wright, at some point, desired to end the relationship so that Benitezez's advances thereafter were unwanted; that TSA and DHS also knew that Benitez was of "dangerous character and ungovernable temper" and had a propensity for violence; that TSA and DHS knew or should have known that Mrs. Wright's safety was in danger; and yet TSA and DHS failed to take any appropriate corrective action to prevent the affair and instead allowed Benitez to pursue and continually have contact with Mrs. Wright, which proximately led to her death.  Even if all this were true, however, plaintiff still has not stated a cognizable claim for relief.

11

In concluding that the negligence of Government employees
other than the assailant who allowed a foreseeable assault and
battery to occur "may furnish a basis for Government liability
that is entirely independent" of the employment status of the
person committing the assault, Sheridan, 487 U.S. at 401, 108 S.
Ct. 2449, the Court reasoned that "in a case in which the
employment status of the assailant has nothing to do with the
basis for imposing liability on the Government, it would seem
perverse to exonerate the Government because of the happenstance
that [the assailant] was on a federal payroll." Id. at 402, 108
S. Ct. 2449. The Fifth Circuit has explained the Court's holding
in Sheridan, as follows:

> "Sheridan stands for the principle that negligence
> claims related to a Government employee's § 2680(h)
> intentional tort may proceed where the negligence arises
> out of an independent, antecedent duty unrelated to the
> employment relationship between the tortfeasor and the
> United States." Leleux v. United States, 178 F.3d 750,
> 757 (5th Cir. 1999). The actual assault "thus serves
> only to establish the extent of the plaintiff's injury,
> not to establish the ... breach of duty." Thigpen v.
> United States, 800 F.2d 393, 399 n. 10 (4th Cir. 1986)
> (Murnaghan, J., concurring in result). In other words,
> the plaintiffs can recover only if the United States
> breached a duty independent of its employment
> relationship with (the tortfeasor).

Bodin, 462 F.3d at 488-89. The question whether the Government
owes such an an independent duty to protect is a question of state
law where the assault occurred. See id. at 489 (citing 28 U.S.C.

12

§ 1346(b)(1) (rendering United States liable "in accordance with the law of the place where the act or omission occurred")).

Bodin is an example of a case where such a duty was found to exist.  There, the plaintiffs, psychiatric patients of Dr. Gregory Vagshenian at an outpatient facility operated by the Department of Veterans Affairs, alleged that Dr. Vagshenian performed illegal, inappropriate, and unnecessary physical examinations of their genitalia, and they sued the United States for failing to take steps to prevent the doctor's assault and malpractice.  462 F.3d at 484.  The Fifth Circuit identified three separate bases on which a duty arose under Texas law to protect the plaintiffs from the assault, none of which depended on the employment status of the assailant:  the duty of a hospital to exercise care to safeguard patients from known and reasonably known dangers, which duty included taking reasonable steps to prevent assaults by third persons; the heightened duty of care of a provider of psychological services to its patients because of their vulnerability and the resulting special relationship; and the duty of a possessor of land to invitees to protect them from foreseeable assaults on the premises.  Id. at 489.  Thus, the FTCA's intentional tort exception did not preclude the plaintiffs' suit.

As is clear from Bodin, the first step is to determine whether there existed "an independent, antecedent duty unrelated

13

to the employment relationship between the tortfeasor and the United States." <u>Leleux</u>, 178 F.3d at 757.  This is a question of law for the court.  <u>Rein v. Benchmark Constr. Co.</u>, 865 So. 2d 1134, 1143 (Miss. 2004).  The Government maintains it had no independent duty to protect Mrs. Wright from Benitez.  In his response, plaintiff does not even acknowledge this as an issue. Instead, he merely insists that dismissal of his claim at this time would be premature as he has not yet had the opportunity to conduct discovery aimed at ascertaining the Government's knowledge of a "potential problem" involving Benitez and Wright.  The "potential problem" to which plaintiff refers is evidently the affair between Benitez and Mrs. Wright.  However, even if plaintiff could show that the Government knew about the affair, mere knowledge of the affair, even coupled with alleged knowledge that Mrs. Wright did not desire to continue the affair, would not give rise to a duty on the part of the Government, independent of the employment relationship, to protect Mrs. Wright from an assault and battery by Benitez.  There is simply no basis in Mississippi law to find that the Government owed or breached any duty to protect Mrs. Wright, independent of its employment relationship with Benitez.

Plaintiff has certainly identified no such duty.  In the negligence count of his complaint, plaintiff alleges that TSA and/or DHS "breached its duty of care to Stacey Wright in failing

14

to maintaining [sic] working conditions that are reasonably safe."
Yet any duty that state law might possibly impose to provide a
safe place to work by protecting an employee from the predation of
a co-worker/supervisor would not qualify as an independent duty
unrelated to Benitez's employment relationship with TSA.  In his
response to the Government's motion, plaintiff also vaguely
asserts that TSA and DHS had "a duty to prevent" the affair
between Benitez and Mrs. Wright; but again, even if there were
arguably a duty to prevent the affair, that does not equate to a
duty to protect Mrs. Wright from a physical attack at her home
after work hours.  Moreover, even if the Government had been under
a state-law duty to prevent an affair between co-workers, any such
duty would not be "independent of the employment relationship."[4]

The Mississippi courts have found a duty to protect from the
criminal assault of third persons in limited circumstances.  In
Faul v. Perlman, 104 So. 3d 148 (Miss. Ct. App. 2012), the court
recognized that while "[c]ommon law traditionally has not imposed
a broad duty upon individuals to control the conduct of others[,]"
id. at 153 (internal quotation marks and citation omitted), "there

---

[4]    Plaintiff's allegation that Benitez, a TSA management
official and Stacey Wright's superior, pursued the affair with
Mrs. Wright against her wishes, could be construed as a claim of
sexual harassment, which the court has already held is not
actionable by Mr. Wright.  See 914 F. Supp. 2d at 842-43.
Moreover, an employer's duty to prevent sexual harassment of its
employees is obviously completely dependent on the employment
relationship.

are circumstances in which a person owes a duty to protect against

the actions of another," id.   The court stated:

> "Where ... a complaint alleges injuries resulting from
> *the criminal acts of third persons* the common law,
> reluctant to impose liability for nonfeasance, generally
> does not impose a duty upon a defendant to control the
> conduct of another, or to warn of such conduct, unless
> the defendant stands in some special relationship either
> to the person whose conduct needs to be controlled, or
> to the foreseeable victim of such conduct."

Id. at 154 (quoting Chaney v. Superior Court, 39 Cal. App. 4th

152, 46 Cal. Rptr.2d 73, 75 (1995)).

> For example, "[a]lthough not an insurer of an invitee's
> safety, a premises owner owes a duty to exercise
> reasonable care to protect the invitee from reasonably
> foreseeable injuries at the hands of another." Simpson
> [v. Boyd], 880 So.2d 1047, 1051 (¶ 14) (Miss. 2004)] (¶
> 14) (citing Newell v. S. Jitney Jungle Co., 830 So. 2d
> 621, 623 (¶ 6) (Miss. 2002)). Similarly, "[a]lthough a
> board of education is not an insurer of the safety of
> its students, there is an obligation to supervise
> adequately the activities of students within its charge,
> and it will be held liable for a foreseeable injury
> proximately related to the absence of supervision."
> Summers ex rel. Dawson v. St. Andrew's Episcopal Sch.,
> Inc., 759 So. 2d 1203, 1214 (¶ 47) (Miss. 2000) (citing
> James v. Gloversville Enlarged Sch. Dist., 155 A.D.2d
> 811, 548 N.Y.S.2d 87, 88 (N.Y.1989)).

104 So. 3d at 153-54.   See also id. at 154 (holding that wife who

invited child into her home assumed a special relationship with

the child based on the child's dependence on her and hence had a

duty to protect the child against and/or warn about her husband's

reasonably foreseeable criminal conduct toward her); Washington v.

Casino Amer., Inc. 820 So. 2d 743, 746 (Miss. Ct. App. 2002)

(stating that "while generally there is no duty to protect others

from the criminal activities of third persons, when a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty.").

In the case at bar, Benitez's attack of Mrs. Wright occurred at her apartment and not on government property so that the Government owed Mrs. Wright no duties as a premises owner.  The Government did not voluntarily undertake any duty to protect Mrs. Wright from a criminal attack by third persons.  And, there is nothing in the Mississippi cases to suggest that the Mississippi Supreme Court would treat the employer/employee relationship as a "special relationship" giving rise to a duty on the employer to protect its employees from criminal assault away from the employer's premises.[5]

In the absence of a duty to protect Mrs. Wright, independent of any duty arising by virtue of the Government's employment relationship with Benitez, plaintiff's negligence claim against

---

[5]     Some courts have recognized a duty by an employer to protect an employee from imminent danger while at work.  <u>See</u>, <u>e.g.</u>, <u>Dupont v. Aavid Thermal Technologies</u>, 147 N.H. 706, 713, 798 A.2d 587 (2002).  There are no Mississippi cases recognizing such a duty; but even if such a duty did exist, plaintiff has alleged no basis for finding such a duty in the circumstances of this case.  There is no allegation of a specific imminent threat posed by Benitez.  Plaintiff merely refers in his complaint to Benitez's "ungovernable temper" and "propensity for violence," and does not indicate that the Government should have known of any threat of imminent danger to Mrs. Wright.  It is worth noting, too, that there is no allegation or factual basis for inferring that Mrs. Wright, who had been involved in an affair with Benitez for more than a year, was unaware of his alleged "ungovernable temper" and/or "propensity for violence."

the Government for failing to prevent the attack fails as a matter of law and will be dismissed.

Alienation of Affection

As discussed supra, under the FTCA, the court must look to Mississippi law to determine whether or not a tort claim is actionable, since the FTCA waives sovereign immunity for a government employee's tort committed in the scope of employment only in circumstances where a private person would be liable in accordance with the law of the place where the tort occurred. The Mississippi Supreme Court has held that an employer may not be held vicariously liable for alienation of affection allegedly arising out of an illicit relationship between two employees.  See Children's Medical Group, P.A. v. Phillips, 940 So. 2d 931, 935 (2006) (holding that as a matter of law, a doctor's affair with a nurse working in the same clinic was "so clearly beyond [the doctor's] course and scope of employment that [it could not] form the basis for a claim of vicarious liability, as a matter of law").  Moreover, the Mississippi Supreme Court has clearly held that an employer has no duty to "'uncover his employee's concealed, clandestine, personal activities.'"  Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay, 42 So. 3d 474, 489 (Miss. 2010) (quoting Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans, 32 F.3d 953, 960 (5th Cir. 1994)). Yet in Children's Medical Group, the court denied a Rule 12(b)(6)

18

motion to dismiss a husband's suit against his wife's employer for allegedly allowing her and a coworker to engage in an extramarital affair.  940 So. 2d at 932.  Similar to plaintiff's allegations herein, the plaintiff in Children's Medical Group alleged that the employer "knew of and negligently and recklessly allowed the illicit relationship between" one of the doctors at Children's Medical Group and an employee, "to be carried on while employed with said [doctor] at its office and elsewhere."  Id. at 933.  Children's Medical Group sought dismissal, arguing it owed no duty to the plaintiff to prevent the doctor from pursuing a consensual affair with another employee.  Id.  The court denied the motion, stating it was unable to say as a matter of law that there were no possible facts which could result in Children's Medical Group's liability for alienation of affection based on its own actions.

The Mississippi Supreme Court has refused to abolish the tort of alienation of affection "on public policy grounds 'in the interest of protecting the marriage relationship and providing a remedy for intentional conduct which causes a loss of consortium.'"  Brent v. Mathis, --- So. 3d ----, 2014 WL 5766919, at 2 (Miss. 2014) (quoting Fitch v. Valentine, 959 So. 2d 1012, 1020 (Miss. 2007)).  To succeed on a claim of alienation of affection, a plaintiff must prove the following elements: "(1)wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) causal connection between such conduct and

19

loss." <u>Fitch</u>, 959 So. 2d at 1025.  The Mississippi Supreme Court
has described the tort as

> the only available avenue to provide redress for a
> spouse who has suffered loss and injury to his or her
> marital relationship against the third party who,
> through persuasion, enticement, or inducement, caused or
> contributed to the abandonment of the marriage and/or
> the loss of affections by active interference.

<u>Id</u>. at 1020.  There is nothing in plaintiff's complaint in the
case at bar to indicate in what manner the Government could be
found to have actively interfered in the relationship between
plaintiff and his wife, or to have persuaded, enticed or induced
Mrs. Wright to engage in an extramarital affair with Benitez.
Plaintiff alleges nothing more than that the Government knew or
should have known of the affair and failed to take corrective
action to stop the affair, thereby allowing the affair to
continue.  Under Mississippi law, merely to allege and prove that
the employer "should have known" of the affair is not sufficient
to state a claim, since the employer has no duty to "'uncover his
employee's *concealed, clandestine, personal activities*.'"  <u>Baker
Donelson</u>, 42 So. 3d at 489 (quoting <u>Tichenor</u>, 32 F.3d at 960).
But even if the plaintiff had alleged and could prove that the
Government knew of the affair, in the court's opinion, that
knowledge would not suffice to support liability for alienation of
affection.  Accepting that under Mississippi law, there may be
some circumstance in which an employer could be held liable for

alienation of affection, it defies reason to consider that an employer who merely does nothing in the face of knowledge of an affair can be found to have persuaded, enticed or induced the affair or to have actively interfered in the relationship between a complainant and his spouse.  For that reason, the court is of the opinion that the complaint fails to state a claim against the Government for alienation of affection.

Even if Mississippi law were to the contrary, however, the court would find that the complaint in this cause should be dismissed on summary judgment.  Despite having alleged that the Government knew or should have known of the affair, plaintiff effectively concedes that he has no proof that the Government did, in fact, know about the affair between Benitez and Mrs. Wright. Plaintiff requests that he be granted an opportunity for discovery aimed at uncovering proof of such knowledge.  However, he offers no sound basis for predicting that such proof exists.  In support of his request for discovery, plaintiff has offered the affidavit of his "expert in law enforcement [and] criminal justice", John Tisdale, who relates that during the course of "studying this case", he interviewed Mrs. Wright's sister, Lisa Williams, and she indicated to him that Mrs. Wright "was a victim of sexual harassment [by Benitez] and was scared to report this behavior."[6]

_____

[6]    The court is uncertain as to Tisdale's interest in this issue in any event.  As a professed expert in "law enforcement and criminal justice," it would seem he could offer nothing of

Tisdale further describes two memos he reviewed, one from Benitez and one from Stacey Wright, sent to David Wynn, their superior at TSA, in July 2012 (two months before the murder), in response to an inquiry directed to each of them by Wynn concerning an anonymous letter he had received claiming there was an inappropriate relationship between Benitez and Wright.  Benitez and Wright both flatly denied any such relationship.  Benitez responded that there was "no truth to me dating LTSO Wright," and he claimed to believe the submission was "fabricated by an individual who has a specific agenda in ruining my reputation." Mrs. Wright similarly informed Wynn that this allegation was "a total fabrication and strictly unheard from those who are spreading these lies."

Plaintiff maintains that while these memos tend to show the Government had knowledge of a "potential problem" involving Benitez and Mrs. Wright, Tisdale was not able to complete an in-depth investigation into the Government's knowledge of the affair due to a lack of access to materials that can only be gained through discovery, including, for example, disciplinary records, corrective actions, internal investigations, travel logs, training logs and files relating to the murder.

To secure a continuance for the purpose of obtaining discovery, "the party opposing summary judgment must show that the

_____

relevance on this issue.

additional discovery will be more than a mere 'fishing expedition.'" <u>Addison v. Allstate Ins. Co.</u>, 97 F. Supp. 2d 771, 774 (S.D. Miss. 2000) (internal quotation marks and citation omitted); <u>see also</u> <u>Robbins v. Amoco Prod. Co.</u>, 952 F.2d 901, 907 (5th Cir. 1992) ("Because [R]ule 56(f) cannot be relied upon to defeat a summary judgment motion 'where the result of a continuance to obtain further information would be wholly speculative,' the district court's refusal to grant Robbins's request for additional discovery was not an abuse of discretion." (internal citation and quotation marks omitted)); <u>Paul Kadair, Inc. v. Sony Corp. of Am.</u>, 694 F.2d 1017, 1029 (5th Cir. 1983) ("The intent of Rule 56(f) of the Federal Rules of Civil Procedure is not to open the discovery net to allow a fishing expedition.") (internal quotation marks and citation omitted). Here, it is entirely speculative that discovery might aid plaintiff in proving that the Government was aware of the affair between Benitez and Mrs. Wright. Mrs. Wright's sister reportedly has stated that her sister was "scared" to report the relationship, or, as characterized by plaintiff, the "harassment". Furthermore, it is undisputed that when the affair was brought to the attention of TSA officials, inquiry was made of Benitez and Mrs. Wright and both vehemently denied the allegation – an allegation which was received from an anonymous source thus precluding questioning concerning the allegation. In addition, in his testimony at his

criminal trial, Benitez indicated that prior to the murder, TSA officials were unaware of the affair.  According to Benitez, during the argument between him and Mrs. Wright just prior to his attack, she threatened to report the affair to TSA officials.  In the face of such evidence indicating that the Government had no knowledge of the affair, plaintiff has failed to suggest any reason to anticipate that discovery might uncover facts that show otherwise.  In the absence of such a showing, this court perceives no valid basis for postponing consideration of the Government's motion while plaintiff goes on a fishing expedition.

The court concludes that as plaintiff has presented no evidence to show that the Government had knowledge of the affair between Benitez and Mrs. Wright, summary judgment is proper on his claim for alienation of affection.

Conclusion

Based on all of the foregoing, it is ordered that the Government's motion to dismiss, or in the alternative, for summary judgment, is granted, as set forth herein.

SO ORDERED this 18th day of November, 2014.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE